(7 Misc. Rep. 133.)

### RISK v. UFFELMAN et al.

(Common Pleas of New York City and County, General Term.    February 5, 1894.)

1. DISMISSAL OF ACTION—FAILURE TO RETURN SUMMONS.
   Under Consolidation Act, (Laws 1882, c. 410,) § 1382, providing that an action in the district court may be dismissed where plaintiff fails to appear at the time specified in the summons, the dismissal may be on the copy summons, where the original was not returned and plaintiff did not appear.  26 N. Y. Supp. 880, affirmed.

2. JUDGMENT OF DISTRICT COURT—FAILURE TO DOCKET.
   A judgment of a district court of New York city is not vitiated by the fact that it was not docketed.

Appeal from city court, general term.

Action by William Risk against Richard Uffelman and another. From a judgment of the city court (26 N. Y. Supp. 880) affirming a judgment in favor of plaintiff, defendants appeal.  Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Uriah W. Tompkins, for appellants.
James R. Angel, for respondent.

BOOKSTAVER, J.  On or about the 31st October, 1892, one Tilly Siegmann procured a summons from the district court of the city of New York for the first judicial district, upon an alleged claim for $250 against William Risk, the respondent herein, being the defendant in that action.  On the same day a warrant of attachment was issued in such action at the instance of the plaintiff herein, and upon procuring such warrant the usual bond in such case, executed by the defendants in this action, was given.  Said attachment having been delivered by the plaintiff or some one in her behalf to one John Salmon, a city marshal, he proceeded with a posse of men, between 6 and 7 o'clock in the evening of the same day, to the grocery store of Risk, at 280 Pleasant avenue, in this city, and seized and took possession of the stock of groceries claimed to belong to the respondent, by virtue of the attachment, and served him with a copy of the same, and also with a copy of the summons in the action, and thereafter ejected Risk and his wife, who was assisting him in his business, from the store; and he, or some one claimed by the plaintiff in this action to be acting with him, remained in possession of the stock of goods until about 10 o'clock the next morning, when, as Risk claims, Salmon caused the entire stock to be sold out at public auction, he himself being present and directing the sale, although Salmon denied on the trial that he was present, or had anything to do with it.  The entire stock of goods was sold at that time, and thus lost to Risk.  As far as appears from the evidence, no inventory of the goods so seized was ever made by the marshal or served upon Risk or filed in the clerk's office, and no return whatever of the warrant of attachment or the summons was ever made or filed with the court.  The district court summons was made returnable before the court November 11, 1892, at 10:30 o'clock.  On the return day Risk appeared

in the court pursuant to the summons with his counsel, ready to defend the action, and waited more than an hour, during which time the plaintiff in the suit and attachment did not appear in person or by attorney, whereupon Risk, the defendant in that action and plaintiff in this, moved the court to dismiss the action and to vacate the attachment, by reason of plaintiff's default in appearance, which the court did, indorsing the judgment of dismissal and vacation of the attachment upon the copy of the summons served by the marshal upon Risk, and filing the same with the clerk of the court as the judgment record thereof. Thereafter this action was brought against the defendants herein on the undertaking before mentioned to recover the full amount thereof as damages claimed by the plaintiff to have been sustained by him by reason of the levying of the warrant of attachment before mentioned. Issue was joined, and on the 18th October, 1893, was tried in the city court, and resulted in a judgment in favor of plaintiff for $653.51 damages and costs, from which an appeal was taken to the general term of that court, where the judgment was affirmed. Hence this appeal.

The first question which arises on this appeal is whether the district court judgment before mentioned was regular, and could be entered upon a copy of the summons, the original never having been returned or filed in the court. Appellants claim that the judgment was irregular, and could not be entered upon the copy of the summons, the marshal not having made any return on the original; citing section 2916 of the Code, and Jackson v. Sherwood, 50 Barb. 356. The portion of the section quoted is to the effect that "the justice may upon the return of the summons, or at any time to which the action is adjourned, vacate the warrant of attachment upon his own motion if he deems the papers upon which it was granted insufficient," or he may at that time do so upon the motion of defendant; and Jackson v. Sherwood holds that the summons must be returned to the justice with a written return thereon by the officer or person making the service, to confer jurisdiction upon the justice to proceed. But this latter case, and many others which could be cited, arose in instances where the plaintiff undertook to proceed without the return in writing under the hand of the marshal; and even as to those cases it was said in Reno v. Pindar, 20 N. Y. 298, 304, "that evidence may be given in fact of the actual service of the process, and the position taken by plaintiff's counsel that the fact of service without the return would not give jurisdiction cannot be sustained." Appellant seems to rely mainly upon the sections of the Code which relate to district court actions, as he quotes from them. While it is true that these sections were made applicable to district courts of this city, the Code (section 3211, subd. 3) expressly provides that "the manner of applying for, granting and executing an order of arrest and warrant of attachment or a requisition to replevy, and the proceedings thereupon and with respect thereto as prescribed in the articles so made applicable [to district courts] are subject to the statutes remaining unrepealed after this chapter takes effect especially ap-

plicable to those courts or to any of them, prescribing the duties of the justice or the clerk thereof, or regulating the mode of transacting business in an action brought therein." So that it is not safe to rely upon the Code, but reference must be had to chapter 410 of the Laws of 1882, commonly known as the "Consolidation Act." Section 1303 of that act provides that the action in the district court should be deemed commenced at the time the summons is actually delivered for service; and section 1296 provides that it must be commenced by the voluntary appearance of and joinder of issue of the parties, or by the service of a summons. Another section of the same act provides that such service must be made personally upon one of full age, and not under disability. In this case a copy of the summons, together with a copy of the attachment, was served upon Risk personally. The action, we think, must therefore be deemed to have been commenced at that time, and Risk could refuse to obey the directions of the summons only at his peril. As to him, the action was then actually commenced, and his appearance on the return day in accordance with its requirements gave the court jurisdiction as to him. Whether the court acquired jurisdiction, or could proceed against him in his absence, on plaintiff's motion, before a return as required by law was made by the marshal, is an entirely different question. Section 1366 provides that if the plaintiff fails to appear on the return of the summons, and make his complaint, the action must be dismissed; and section 1382, that "judgment that the action be dismissed with costs without prejudice to a new action shall be rendered in the following cases. * * * (2) Where the plaintiff fails to appear at the time specified in the summons or upon adjournment;" and section 1420, that if judgment be given against the plaintiff for any cause, in any action, after an appearance by the defendant, the defendant shall recover $10 where judgment is entered without a trial. This was precisely what was done in this action. But appellants contend that, notwithstanding this, inasmuch as the original summons was not returned as required by law, no judgment could be entered. While we concede that this contention may be well founded as far as the plaintiff is concerned, we think it has no application to proceedings by the defendant on plaintiff's failure to appear. It was the marshal's duty to return the summons as required by law, but his failure to do so is not the defendant's fault. If he could not proceed because of this, he would be left remediless. As we understand appellants' contention, the judgment must be entered upon the original summons. After diligent search, we find no provisions of law to this effect. It is not in analogy with proceedings in any other court. In courts of record, where judgments are entered in favor of the defendants, the original summons is seldom or never filed with the judgment roll. It is not necessary, even, to file the copy served, but a copy of that copy answers the purpose. In the case under consideration there was no other way of entering the judgment than that pursued by the justice who gave it. The plaintiff, by obtaining the summons and giving it, together with the copy, to the marshal, is estopped from disputing the validity

of that copy. It was his act which brought the defendant into court.

Appellants also contend that no docket was ever made of the judgment, and it was therefore void. But a careful examination of the testimony does not show that no docket was ever made as required by law. On the other hand, the clerk, when asked by appellants' counsel whether there was a docket of the judgment or not, replied he would not like to answer a question of that kind without making other searches; that is, that he was not prepared to testify there was no docket. But, even if there had been none, this would not vitiate the judgment, for section 1386, c. 410, recognizes the distinction between a judgment and its docket. To keep the docket is the duty of the clerk, and not of the justice. As far as he is concerned, the judgment is complete when he has made the necessary entries upon the original summons, or the copy thereof. The judgment is sufficiently rendered when an entry is made by the judge in his minutes, or a memorandum of it is made upon the papers, if made within five days, although no entry is made in the docket until afterwards. Hall v. Tuttle, 6 Hill, 38; Walrod v. Shuler, 2 N. Y. 134. Section 1414 of chapter 410 of the Laws of 1882 provides that a certified copy by the clerk or his deputy of any paper on file in his office shall be prima facie evidence of that paper; much more must the original itself, which was produced and offered in evidence in this case.

Appellants further contend that the warrant of attachment was countermanded by plaintiff's attorney, and that thereupon his authority ceased, and he could and did do nothing further under the attachment. Also that there was a compromise and agreement between the plaintiff in this action, so being defendant in that, and the plaintiff in that action and Smith & Sills, whereby the property levied upon was conveyed to Smith & Sills, and the plaintiff in this action had no further interest in it, and could not recover upon the undertaking given on issuing the attachment in damages for its taking. All these questions were hotly contested on the trial of this action, and what actually took place is left very much in doubt. The testimony on behalf of the plaintiff is somewhat confused, and on the part of the defendants it is manifest that neither Salmon nor any one connected with him in the transaction desired to tell more about it than they were actually compelled to in order to make a show of defense, and their testimony was even more conflicting and self-contradictory than the plaintiff's. The questions as to the vacation and discharge of the attachment, the compromise and settlement of the action, and as to the ownership of the property, and as to the marshal's action under the attachment, were all fairly submitted to the jury, and their findings on these questions, although they might have been reviewed by the general term of the city court, are conclusive upon us.

Appellants claim that it was error to exclude the original summons and warrant with the marshal's return thereon. By the marshal's own confession, neither the summons nor the attachment was ever returned to the court. The return was not in his

handwriting, nor does it appear when what purports to be a return was actually made. To permit such papers in evidence would open a wide door for fraud and oppression.

Appellants also claim that no evidence as to the duress of property should have been allowed in the case. But they themselves, by their counsel, opened the door to this, and it was one of the issues brought into the case by their own acts, and there was no error in admitting the testimony.

It was not error to exclude defendants' Exhibit No. 1 for identification. At the time it was offered the signature of Mrs. Risk had not been sufficiently proved to permit its being received in evidence, and at that stage it was incompetent. The court expressly stated it was to be admitted "if connected otherwise, if sufficiently proved." When her signature was subsequently proved, it was not again offered in evidence, but, notwithstanding, it was practically before the jury, and they doubtless considered it.

The objection taken to the question about plaintiff's ejectment from his store was not well taken, as no ground for it was stated. Although the question as to the effect of the attachment upon plaintiff's business was improper in form, it is clear it did the defendants no harm, as the answer stated facts, and not conclusions.

The exception to the charge is not well taken. It was not, in substance, "that if the bill of sale had been secured by force or fraud, the verdict of the jury should be for the plaintiff," but was in the following language: "Was the attachment vacated and discharged, or did the sale that occurred on the following day occur under a bill of sale properly executed, or was it secured by force or fraud?"—which was entirely proper under the evidence given in the case. The refusal of the court to charge defendants' first request in the following words: "That the plaintiff is not entitled to recover more than nominal damages by reason of the marshal being in possession of the property for about one and a half hours before he was notified to withdraw the attachment"—was proper, and the exception to such refusal was not well taken, because there was much conflicting evidence on this question, while the request assumes there was none, and the law applicable to those facts had been before clearly stated by the judge who tried the case. The undertaking of the defendants on the issuing of the attachment was to the effect that, "if the defendant recover a judgment, or the warrant of attachment is vacated, the plaintiff will pay all costs which may be awarded to the defendant, and all damages which he may sustain by reason of the attachment, not exceeding the sum of $500." In Earl v. Spooner, 3 Denio, 246, which was an action on a bond similar in all respects to the undertaking now under consideration, the court said:

"The defendants were bound by their bond to pay the plaintiff all damages and costs which he might sustain by reason of the issuing of the attachment referred to in said bonds, if the plaintiff in said attachment failed to recover judgment thereon. No such judgment was recovered, but, on the contrary, a judgment of nonsuit was rendered against the plaintiff in the attachment.

The condition of the bond was thus broken, and prima facie the defendants were responsible for the full value of the property which had been seized on the attachment. They had bound themselves to pay all damages which the defendant in the attachment might sustain 'by reason of such attachment.' And in Northrup v. Garrett, 17 Hun, 497, it was held that, although the justice failed to acquire jurisdiction in the attachment suit, the defendant in that suit might maintain an action upon the bond,"—quoting Bowne v. Mellor, 6 Hill, 496.

The plaintiff therefore had fully made out the case, and was entitled to judgment to the amount of the damages sustained by him, to wit, the value of the property. It is true that the proof of this was somewhat vague, but the property was of much greater value than the verdict rendered, and appellants cannot question the evidence, because they deprived plaintiff of all opportunity of making an inventory or procuring other proof than that which was given of its value. We regret to say that the evidence in this case leads us to believe that under color of law one of its officers has been guilty of inflicting a serious wrong on a poor and ignorant person, one of a class both the law and its officers should be especially vigilant in protecting. The verdict of the jury, which we think entirely justified by the evidence, only rights this wrong in part. The marshal, if proved guilty on proper charges, should, in addition, be deprived of his office, and severely punished. We think no error was committed on the trial which requires us to reverse the judgment, which is therefore affirmed, with costs. All concur.